IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RANDY OLDHAM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:05-CV-2361-M |
| | § | |
| ORIX FINANCIAL SERVICES, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment. The central question presented is whether the Sales Incentive Plan ("Plan") of Defendant ORIX Financial Services, Inc. ("OFS") is an enforceable contract or merely a voluntary incentive agreement. Because the Court finds the Plan unenforceable as a matter of law, and because it finds Plaintiff Randy Oldham's alternative theories of recovery to be without merit, it **GRANTS** Defendant's Motion for Summary Judgment in its entirety.

## BACKGROUND

Randy Oldham became an employee of OFS on June 6, 2003 pursuant to an at-will employment contract executed by Oldham and OFS. The contract provided for a base salary, and stated that Oldham would be "eligible" to receive incentive compensation awards in accordance with the Sales Incentive Plan, which is contained in a document Oldham later signed.[1] The contract also contained the following disclaimer: "no policy, guideline or other statement of

---

[1] There is a dispute between the parties regarding which of two Sales Incentive Plans was in effect during the relevant time period. The differences between the two are slight and do not affect the Court's judgment. The Court will assume for the sake of this Order that the Plan of September 2004 was in effect, as Oldham contends.

business philosophy or operating principle or standard contained in any handbook, manual or other OFS document, shall give rise to any contractual obligation whatsoever." The Plan's stated purpose was to provide participants "with an opportunity to receive Sales Incentive Awards," which would potentially be awarded based upon an employee's contributions to the success of his or her working group.

This dispute stems from Oldham's claim to incentive compensation, primarily for work he claims he performed in connection with a sizable deal between OFS and another company. OFS disputed Oldham's involvement in that deal and refused to award him incentive compensation. Oldham also claimed incentive compensation for work performed on financing deals that he asserts would have closed during his employment had he not been constructively discharged, but in his response, he acknowledged his determination not to pursue that claim.

## STANDARD OF REVIEW

Summary judgment is warranted when the facts as reflected in the pleadings, affidavits, and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322–25). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of S. Houston*, 922 F.2d 1183,

1187 (5th Cir. 1991).

The nonmovant is then required to go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). That party may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. FED. R. CIV. P. 56(e). The court must review all evidence in the record, giving credence to evidence favoring the nonmovant as well as "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses," and disregarding evidence favorable to the movant that the jury would not be required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 152 (2000). Further, "the court must draw all justifiable inferences in favor of the nonmovant." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005) (citing *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993)).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625. "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991). However, in the absence of proof, a court will not conclude that the nonmoving party could prove the required facts. *Lynch*, 140 F.3d at 625. Further, the party opposing summary judgment must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

## ANALYSIS

Defendant moves the Court for summary judgment in its favor against all of Oldham's claims, which are for (1) breach of contract, (2) unjust enrichment, and (3) money had and received.

### *A. Breach of Contract*

Oldham contends that OFS breached a contract, by refusing to compensate him under the Plan for work he performed. Under Texas law, the essential elements in a suit for breach of contract are: (1) that a valid contract existed, (2) that the plaintiff performed or tendered performance, (3) that the defendant breached the contract, and (4) that the plaintiff was damaged as a result of the breach. *Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 326 (Tex. App.—Houston [1st Dist.] 1995, no writ). The first element is dispositive of Oldham's claims, as the Court finds that the Plan is not an enforceable contract. Even were the contract enforceable, Oldham's breach of contract claim would fail as the Plan vests the authority to interpret the Plan and to adjust individual payouts exclusively with the Plan Committee.

In ascertaining the existence and scope of a contract, the Court's primary concern is to vindicate the intentions of the parties as expressed in the written instrument. *Stinger v. Stewart & Stevenson Servs., Inc.*, 830 S.W.2d 715, 719 (Tex. App.—Houston [14th Dist.] 1992, writ denied). In the context of incentive compensation schemes under Texas law, courts have found that certain disclamatory provisions render the schemes merely aspirational incentives, not enforceable contracts which codify obligations. In *Stinger*, for example, an employee's claim for breach of contract was rejected because the incentive arrangement disclaimed binding effect. 830 S.W.2d at 719. The determinative provision in the arrangement in *Stinger* provided as

follows:

> This arrangement is an incentive arrangement and is not an employment contract. It is the intent of this arrangement that the results will be for the mutual benefit of both the Company and the employee as long as the employee is employed by the Company and it is agreed that this arrangement may be modified or changed upwards or downwards at any time at the Company's discretion.

*Id.* at 717. A similar result obtained where the incentive plan "contain[ed] specific provisions that disclaim[ed] its use as a contract and [made] all terms modifiable at the discretion of the [employer]." *Kougl v. Xspedius Mgmt. Co.*, No. 3:04-CV-2518-D, 2005 WL 1421446, at *2 (N.D. Tex. June 1, 2005) (Fitzwater, J.). Finally, a recent decision of the Fourth Circuit found the language of an incentive plan to manifest a "clear intent to preclude the formation of a contract" in stating: "(1) that [the employee] could not rely on the intended commissions described in the Sales Incentive Plan 'until actual payment has been made'; (2) that [the employer] could modify or *cancel* the Sales Incentive Plan at any time *before commissions under it are paid*; and (3) that [the employee] was not entitled to any payment 'in advance of his . . . receipt of the payment.'" *Jensen v. Int'l Bus. Machs. Corp.*, 454 F.3d 382, 388 (4th Cir. 2006) (emphasis in original).

In accord with *Stinger* and similar cases, the Court finds that the language of the Plan manifested an unambiguous intent to preclude formation of a contract. In salient part, the Plan provided: (1) that "[b]eing a Participant is not a guarantee that any incentive will be granted to the Participant"; (2) that the "Plan Committee is solely responsible for, and has final decision authority regarding all aspects of the Plan, including . . . interpreting the plan . . . and adjusting individual payouts, even if it appears to conflict with other statements in the Plan"; (3) that the "Plan is not to be construed as constituting a contract of employment"; (4) that the "Plan is

contingent in character, and therefore, no rights shall vest in any Participant until all conditions of the Plan are satisfied and the amount of the Incentives are determined by the Plan Committee and actually paid"; (5) that "[n]o rights in the Plan shall be deemed to accrue to any person . . . until such date the payment is made"; and (6) that the "Plan Committee may, at any time, revise, amend, suspend, or terminate in whole or in part, any or all provisions of the Plan." These provisions of the Plan leave no doubt that OFS intended merely to set forth an incentive arrangement, not a binding contract.

Even were the Plan enforceable, it provides for its interpretation and adjustment solely by the Plan Committee. Thus, the Plan Committee's conclusion that Oldham was not entitled to compensation under the Plan is dispositive of his claim. The Court notes that it goes no further in examining the merits of Oldham's claims regarding the work performed on the deal at issue.

Oldham's response relies on *Paniagua v. City of Galveston*, and similar cases. 995 F.2d 1310 (5th Cir. 1993). The Court believes such reliance is misplaced. In *Paniagua*, the Fifth Circuit held that a standby pay provision contained in the City of Galveston's Personnel Rules and Regulations was enforceable, despite the City's ability to modify the regulations at any time. *Id.* at 1312–15. The holding relied on the Fifth Circuit's finding that the standby provision was in fact a "term and condition of Paniagua's employment contract." *Id.* at 1314. Importantly, the court found that "the absence of any disclaimer in the Rules and Regulations—i.e., to the effect that they do not create a contract or affect legal relations—reinforces" the conclusion that "the standby provision became part of the terms of Paniagua's employment contract." *Id.* at 1314–15. Here, by contrast, disclaimers in the Plan make clear that its terms are *not* part of Oldham's employment contract, which was separately executed and contained a merger clause disclaiming

the enforceability of virtually any other document exchanged by the parties. *See Hughes v. Tex. Instruments, Inc.*, 2000 WL 1708966, at *3–6 (Tex. App.—Dallas 2000, no pet.) (not designated for publication) (distinguishing *Paniagua* on basis of disclaimers in on-call compensation provision). *Adams v. Valley Federal Credit Union*, also relied on by Oldham, is similarly unavailing. 848 S.W.2d 182 (Tex. App.—Corpus Christi 1992, writ denied). In *Adams*, the relevant issue was limited to whether the employee had acquiesced to the change of a term of her employment contract. *Id.* at 189.

Having concluded that the Plan was not an enforceable contract, the Court finds that Oldham's breach of contract claims must fail. Accordingly, it **GRANTS** summary judgment in OFS's favor against Oldham's breach of contract claims.

*B. Alternative Claims*

Oldham alternatively seeks the same compensation as above under the theories of unjust enrichment and money had and received. Recovery under unjust enrichment is appropriate "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). "An action for money had and received arises when a party obtains money which in equity and good conscience belongs to another." *Best Buy Co. v. Barrera*, 2006 WL 3438521, at *3 (Tex. App.—Corpus Christi 2006, pet. filed). "It is essentially an equitable doctrine," conceptually related to the doctrine of unjust enrichment, "applied to *prevent* unjust enrichment." *Id.* (emphasis in original). Both are equitable doctrines that seek to enforce quasi-contracts or contracts implied by law. *See Friberg-Cooper Water Supply Corp. v. Elledge*, 197 S.W.3d 826, 831 (Tex. App.—Fort Worth 2006, pet. filed) (money had and received); *Allen v. Berrey*, 645

S.W.2d 550, 553 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.) (unjust enrichment). There can be no recovery under a contract implied by law, however, where "a valid express contract governing the subject matter exists." *Allen*, 645 S.W.2d at 553. Here, Oldham's employment compensation was governed by a valid employment contract executed by the parties on June 6, 2003; thus, he cannot recover additional employment compensation under a contract implied by law. Oldham protests that it is a perverse result to deny the enforceability of the incentive compensation Plan and to deny equitable claims for relief based upon the employment contract. The Court disagrees. The Plan evidences a clear intent by OFS not to include additional compensation as terms of the employment contract. The perverse result would be to allow equitable recovery in spite of the clear intent to limit contractually obligated compensation to the amount contained in the employment contract. *See, e.g.*, *Shannon v. S. Co. Energy Mktg.*, 2002 WL 1733243, at *2 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (rejecting an equitable claim for recovery of an incentive bonus based on the existence of an oral, at-will employment agreement). Accordingly, the Court **GRANTS** the Motion for Summary Judgment in OFS's favor against Oldham's alternative theories of recovery.

## CONCLUSION

The Court **GRANTS** Defendant's Motion for Summary Judgment in its entirety, and accordingly **DISMISSES** all of Oldham's claims with prejudice.

**SO ORDERED**.

February 21, 2007.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**